SC

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Angel P. Ruiz,

                            Plaintiff,

v.

State of Arizona, et al.,

                            Defendants.

No.    CV-23-02241-PHX-JAT (ASB)

**ORDER**

I.      **Procedural History**

        On June 9, 2023, Plaintiff Angel P. Ruiz, who is represented by counsel, filed a Complaint in Maricopa County Superior Court.  On August 31, 2023, Plaintiff filed a First Amended Complaint against the State of Arizona, Centurion Health Inc., "Centene Corporation or MHM Services Inc.," former Director of the Arizona Department of Corrections, Rehabilitation, and Reentry (ADC) David Shinn, ADC Medical Director Richard Pratt, and the following Centurion employees at the ADC Lewis Complex: Susan Thompson, Katie Lenhard, Itzamara Elias Adona, Dale Patterson, Lilian Dauod, Megan Leinen, Delia Garcia, Joanna Webb, Sharon Bodily, Manuel Ficachi, Amy McAdams, Danielle Dennis, Kyle Henry, Emily Dalton, and Oyuki Coronado.[1]  (Doc. 1-3 at pp. 56-

_____

[1] Plaintiff has also named as Doe Defendants, the spouses of almost every individual named as a Defendant, presumably to facilitate the collection of any resulting judgment. *See* Ariz. Rev. Stat. § 25-215 (requiring litigants to name both spouses when seeking recovery against community property); *see also* Fed. R. Civ. P. 69(a)(1) (procedure on execution of money judgment must accord with procedure of the state where the court is located).  Plaintiff has not named the spouses of Defendants Shinn and Pratt.

104).[2]  On October 27, 2023, Defendant Dennis filed a Notice of Removal and removed the case to this Court (Doc. 1).  Plaintiff then filed a motion for remand (Doc. 4), a "Notice of Filing Returns o[f] Service" for Defendants Pratt, Centurion, Thompson, Lenhart, Adona, Patterson, Dauod, Leinen, Garcia (Doc. 5), and a motion for extension of time to serve the remaining Defendants (Doc. 6).  On November 17, 2023, Defendant Dennis filed a motion for extension of time to respond to the remand motion (Doc. 7).  On December 1, 2023, Defendants Adona, State of Arizona, Centene Corporation, Centurion Health Incorporated ("Centurion"), Coronado, Dauod, Garcia, Leinen, Lenhart, MHM Services Incorporated, Patterson, Pratt, Shinn, and Thompson filed a notice of joinder in the notice of removal (Doc. 8) and Defendant Centurion filed a waiver of service (Doc. 9).  On January 7, 2024, Plaintiff filed a supplemental motion for extension of time to serve the remaining Defendants (Doc. 16).

The Court will deny the motion to remand, grant Defendant Dennis's motion for extension of time, and grant Plaintiff's motions for extension of time to serve.  The Court will order a response to the First Amended Complaint as follows: all named Defendants must respond to Count One; Defendants Centurion, Centene Corporation, MHM Services Incorporated, State of Arizona, Shinn, and Pratt must respond to Count Two; Defendants Centurion, Centene Corporation, MHM Services Incorporated, and Lenhart must respond to Count Three; and Defendants Centurion, Centene Corporation, and MHM Services Incorporated must respond to Count Four.

## II.    Removal

A state court defendant may remove to federal court any civil action brought in the state court over which the federal district courts would have original jurisdiction.  28 U.S.C. § 1441(a).  In his First Amended Complaint, Plaintiff alleges, among other claims, Eighth Amendment violations for deliberate indifference to his serious medical needs.  This Court's jurisdiction extends to such claims.  *See* 28 U.S.C. § 1331 (a federal court has

---

[2] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States").

In his motion for remand, Plaintiff does not dispute that Defendant Dennis timely removed the case based upon Plaintiff's § 1983 claims.  Instead, Plaintiff argues that no § 1983 claim has been asserted against the State–which is not a person under § 1983—and claims that the State must "formally waive" its Eleventh Amendment immunity for the case to be removed, and that Dennis failed to state whether unserved Defendants Henry, Ficachi, Bodily, Webb, Dalton, or McAdams had consented to removal.  (Doc. 4 at 1.)

Defendant Dennis expressly stated in her notice of removal that the other *served* Defendants had consented to removal.  (Doc. 1 at 2, ¶ F) (stating that "Under 28 U.S.C. § 1446 (2)(a), all Defendants who have been properly joined and served consent to the removal of this action.").  Plaintiff claims that the consent of unserved Defendants also had to be obtained until after the initial 30-day period for motions to remand has run, citing *Hanken v. Credit Bureau of Kalispell, Inc.*, CV00-0099, 2000 WL 1375260 (D. Mont. Sept. 20, 2000).  *Hanken* specifically states that "a defendant who was not served in the state courts need not join in removal."  *Hanken*, at *1.  *Hanken* also refers to the second paragraph of 28 U.S.C. § 1448 as implying that "any defendant who is served after removal may refuse to join in the removal and move to remand" and that "[t]he general rule requiring unanimity therefore applies even to defendants not served until after the initial thirty-day period for motions to remand has expired."  *Id.*

Each unserved defendant retains the right to move for remand once that defendant is served with process and makes an appearance in a removed case.  *Diversey, Inc. v. Maxwell*, 798 F. Supp.2d 1004, 1007 (E.D. Wis. 2011) (the right of a defendant served post-removal belongs to that defendant, not to the plaintiff).  Thus far, no Defendant has been served since removal.  When and if a previously unserved defendant objects to removal after being served, that defendant may file a motion for remand.  Plaintiff is not entitled to remand based on the possibility that such defendant might file a motion to remand under § 1448's second paragraph.

Plaintiff also argues that the State of Arizona must "formally waive" its Eleventh Amendment immunity in a removed case.   However, a state waives its Eleventh Amendment immunity by removing, or consenting to removal, of a case to federal court. *See, e.g., Pittman v. Oregon, Employment Dep't*, 509 F.3d 1065, 1071 (9th Cir. 2007); *Embury v. King*, 361 F.3d 562, 564-65 (9th Cir. 2004); *Peterson v. State of Calif. Dep't of Corr. & Rehab.*, 451 F. Supp.2d 1092, 1099 (E.D. Cal. 2006); *Morgan v. Arizona*, No. CV 06-0346-TUC-FRZ, 2007 WL 2808477, at *8 (D. Ariz. Sept. 27, 2007).

Plaintiff also notes that he only asserts § 1983 claims against some Defendants, but not against the State of Arizona.  As noted above, this Court's jurisdiction extends to claims for violation of constitutional rights under 42 U.S.C. § 1983 and the Court may exercise supplemental jurisdiction over related state-law claims against other Defendants.  28 U.S.C. § 1367(c).

Plaintiff's state law claims arise out of the same operative facts as his federal claims. Therefore, the Court will exercise supplemental jurisdiction over Plaintiff's related state-law claims.  Plaintiff's motion to remand will be denied.

**III.    Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

## IV.    First Amended Complaint

In his four-count First Amended Complaint, Plaintiff asserts violations of his constitutional rights under the Eighth Amendment and state law claims for negligence or medical malpractice and negligent hiring, retention, and supervision.  As noted above, Plaintiff has sued the State of Arizona, Centurion Health Inc., Centene Corporation, MHM Services Inc., former ADC Director David Shinn, ADC Medical Director Richard Pratt, and the following Centurion employees: Susan Thompson, Katie Lenhard, Itzamara Elias Adona, Dale Patterson, Lilian Dauod, Megan Leinen, Delia Garcia, Joanna Webb, Sharon Bodily, Manuel Ficachi, Amy McAdams, Danielle Dennis, Kyle Henry, Emily Dalton, and Oyuki Coronado.[3]  (Doc. 1-3 at 56-104).  Plaintiff alleges that Defendants Thompson, Dauod, and Coronado were and are Nurse Practitioners (NPs), Defendant Lenhard was and is a Physician's Assistant (PA), and Defendants Adona, Patterson, Leinen, Garcia, Webb, Bodily, Facachi, McAdams, Dennis, and Henry were and are Registered Nurses (RNs). Defendant Centurion is a private entity that was responsible for medical care for ADC prisoners from July 1, 2019 to September 30, 2022, and was, according to Plaintiff, owned at relevant times by Defendants Centene and/or MHM Services.  (Doc. 1-3, ¶ 6.)  Plaintiff alleges that Defendants Coronado, Thompson, Dauod, Adona, Patterson, Ficachi, Garcia,

---

[3]  As noted above, Plaintiff also named the spouses of most of the individually named Defendant as Doe Defendants.  *See* n. 1.

Bodily, Webb, Leinen, McAdams, Dennis, Dalton, and Henry were employed by Centurion at relevant times and worked at ADC's Lewis Complex (hereafter "Individual Medical Defendants"). Plaintiff seeks compensatory and punitive relief.

Plaintiff alleges the following facts in support of his claims:

At relevant times, Plaintiff had a past medical history of infection with multi-drug resistant organisms and endocarditis,[4] and a significant history of bacteremia, i.e., bacterial infection. (*See* Doc. 1-3, pp. 56-104, ¶¶ 206, 237, 284, 286.) Plaintiff's medical history put him at increased risk from sepsis, anemia, and spinal abscesses. (*Id.* ¶ 286.)

On February 21, 2022, Plaintiff submitted a Health Needs Request (HNR) complaining of lower back pain, concern about a possible fracture, and unbearable pain and difficulty walking after a fall; a nurse placed him on the nurse pill line. (*Id.* ¶ 35.) On February 26, 2022, Defendant RN Ficachi saw Plaintiff and Ficachi noted that Plaintiff reported having been suffering pain for six days, which ibuprofen was not relieving. (*Id.* ¶¶ 37, 173.) On February 25, 2022, Defendant NP Thompson verbally ordered 600 mg of ibuprofen for Plaintiff. (*Id.* ¶ 173.) The next day, Defendant NP Thompson saw Plaintiff and ordered a Toradol injection[5] and an x-ray of Plaintiff's lumbar spine while noting that her physical examination of Plaintiff was normal. (*Id.* ¶ 174.) The March 1, 2022 x-ray report noted a normal lumbar spine but limited mobility when bending. (*Id.* ¶ 38.)

On February 26, 2022, Defendant NP Coronado[6] saw Plaintiff for a hepatitis C chronic care appointment at which Plaintiff complained of back pain and inability to sleep,

---

[4] The National Institute of Health's MedLine Plus website describes endocarditis as a life-threatening inflammation of the lining of the heart's chambers and valves, which is usually caused by bacterial or fungal infections that get into the bloodstream and travel to the heart, which if not quickly treated can damage the heart and lead to serious health problems. Persons who previously had endocarditis increases the risks of getting it again. *See* https://medlineplus.gov/endocarditis.html [https://perma.cc/2EWY-YT9X].

[5] The National Institute of Health's MedLine Plus website describes Toradol as a nonsteroidal anti-inflammatory drug used for short-term relief of moderately severe pain. *See* https://medlineplus.gov/druginfo/meds/a614011.html [https://perma.cc/EZ8B-3LMB].

[6] Plaintiff alleges that Coronado saw him on February 22, 2022, but he does not indicate why he was seen or what occurred. (Doc. 1-3 ¶ 225.)

which "self-medicating" did not help.  (*Id.* ¶¶ 219-221.)  Coronado noted that Plaintiff's right flank was tender to palpation.  (*Id.* ¶¶ 37, 221.)  Coronado did not mention Plaintiff's history of endocarditis and multidrug resistant infections.  (*Id.* ¶ 220.)

On March 14, 2022, Plaintiff submitted an HNR stating that he was still experiencing a great deal of pain and difficulty walking.  (*Id.* ¶ 39.)  Plaintiff also reported a lump on the right side of his hip and requested an appointment with a provider.  (*Id.* ¶¶ 39, 176.)  The same day, Plaintiff was seen by a nurse about a skin infection and the nurse contacted a provider who verbally ordered Bactrim, an antibiotic, for the skin infection.[7] (*Id.* ¶ 40.)  Plaintiff's complaints of lower back pain were not addressed at the visit.  (*Id.*)

On March 18, 2022, Plaintiff was seen by a nurse for an allergic reaction to Bactrim.  (*Id.* ¶¶ 42, 177.)   Plaintiff was switched to Clindamycin from Bactrim.  (*Id.* ¶ 177.)  Plaintiff's lower back pain was not addressed at the visit.  (*Id.* ¶ 43.)

On March 21, 2022, Plaintiff submitted another HNR about worsening back pain and concern about an infection of the area.  (*Id.* ¶¶ 44, 177.)  Plaintiff reported that he had lost 25 pounds because he was unable to walk to the chow hall for meals and his pain was interfering with his ability to sleep.  (*Id.*)  Defendant RN Leinen reviewed the HNR but took no action.  (*Id.* ¶ 45.)  Later the same day, Defendant PA Lenhart saw Plaintiff to follow up on his allergic reaction to Bactrim.  (*Id.* ¶¶ 46, 178, 222.)  During the visit, Plaintiff reported that he continued to have right hip and lower back pain, which had lasted more than month, but Lenhart did not examine his back, despite Plaintiff's past reports of a lump in the area.  (*Id.* ¶¶ 160, 179, 222.)  Lenhart noted that Plaintiff's lumbar spine x-ray had revealed no acute abnormalities.  (*Id.* ¶ 222.)  Lenhart ordered more Benadryl for Plaintiff's rash and scheduled a follow-up appointment for March 25, 2022.  (*Id.* ¶¶ 79, 179, 223.)

On March 25, 2022, Plaintiff had a follow-up chronic care visit with Defendant PA Lenhart.  (*Id.* ¶¶ 180, 223.)  Lenhart noted that the rash had improved, his labs were okay,

---

[7]  Plaintiff describes "a skin infection of the right antecubital area secondary to concurrent IVDA (intravenous drug abuse)."  (*Id.* ¶¶ 157, 176.)

and that his CBC was normal with no signs of anemia.  (*Id.* ¶¶ 180, 223.)  Plaintiff again reported continued lower back pain lasting more than a month and complained of sciatic pain in his left foot.  (*Id.* ¶¶ 47, 180, 223.)  Lenhart noted that Plaintiff had difficulty changing positions, putting on shoes, and reported sharp pain at a level 6-8 on a scale of 10.  (*Id.*)  Lenhart characterized the results of her physical examination of Plaintiff's back as "abnormal," and noted that Plaintiff's spinal flexion was limited by pain, his left lumbar paraspinal muscles were tender, he had difficulty getting on and off the exam table, and he had a positive left straight leg test.[8]  (*Id.* ¶¶ 49, 180.)  Lenhart prescribed a five-day course of prednisone, continued ibuprofen, and three days of rest.  (*Id.* ¶ 180.)  Lenhart noted that physical therapy should be considered if Plaintiff showed no improvement.  (*Id.* ¶¶ 50, 180.)  A follow-up appointment was not scheduled.  (*Id.* ¶ 180.)

On March 31, 2022, Defendant RN Adona saw Plaintiff about his back pain.  (*Id.* ¶ 52.)  Plaintiff rated his pain at 8 out of 10 and reported that he was unable to bend over due to pain.  (*Id.*)  By that time, he had taken prednisone for five days, as well as ibuprofen and Naproxen, with no relief.  (*Id.* ¶¶ 52, 145.)  Adona told Plaintiff to continue taking his medications and concluded that a provider referral was unnecessary.  (*Id.* ¶¶ 53, 145.)

On April 8, 2022, Plaintiff submitted another HNR reporting worsening back pain, a lump close to his spine, and numbness in his toes.  (*Id.* ¶¶ 54, 183.)  Plaintiff requested an MRI, medication for nerve damage, a cane, a back brace, and a pillow wedge.  (*Id.*)  Defendant RN McAdams reviewed the HNR and placed Plaintiff on the nurse line; Plaintiff was not seen in response to his HNR.  (*Id.* ¶ 55.)

On April 18, 2022, Plaintiff filed another HNR about his painful back and noted that his cellmate had to assist him with the activities of daily living.  (*Id.* ¶ 150.)  Defendant RN Dennis responded, and documented that Plaintiff's cellmate was assisting Plaintiff with activities of daily living, including tying his shoes.  (*Id.* ¶¶ 56; 150.)  Plaintiff reported that his condition was the "most painful thing" he had experienced and that he sometimes cried

---

[8]  According to Plaintiff, a positive straight leg test is indicative of nerve root entrapment or irritation, or a herniated disc.  (*Id.* ¶¶ 51, 180, 181.)

himself to sleep.  (*Id.*)

On April 21, 2022, Plaintiff submitted another HNR stating that he was in the worst pain of his life and requesting evaluation.  (*Id.* ¶¶ 58, 184.)  Plaintiff also reported difficulties performing simple tasks without his cellmate's assistance.  (*Id.*)  Plaintiff received no response or follow-up.  (*Id.* ¶¶ 59, 184.)

On May 5, 2022, Plaintiff submitted an HNR reporting that he was experiencing cardiac "concerns" and feared he was going to die.  (*Id.* ¶ 152.)  According to Plaintiff, Defendant RN Dalton reviewed the HNR but failed to recognize the need to refer him to a higher level of care.  (*Id.*)

The next day, May 6, 2022, Plaintiff submitted an HNR about a heart valve complaint, which Defendant RN Dalton reviewed.  (*Id.* ¶¶ 60, 184.)  A medical incident command system (ICS)[9] was triggered based upon Plaintiff's history of endocarditis and intravenous drug abuse.  (*Id.* ¶¶ 61, 185.)  An electrocardiogram (EKG) and intravenous hydration were ordered by a "provider"; the EKG showed sinus tachycardia, i.e., a faster than normal heart rhythm.  (*Id.*)  Plaintiff also had an elevated temperature.  (*Id.*)  No follow-up was scheduled.  (*Id.*)  Between May 6 and May 22, 2022, Defendant NP Dauod ordered a diagnostic panel without seeing Plaintiff in person.  (*Id.* ¶ 227.)

On May 21, 2022, Plaintiff submitted four HNRs seeking emergency medical care, which were reviewed by Defendant RNs Henry and Patterson.  (*Id.* ¶ 62.)  In one, Plaintiff requested ibuprofen and Tylenol for pain; in his May 25 response, Defendant RN Henry stated the medication was on hold and that the pharmacy had been notified.  (*Id.* ¶ 153.)  In a second HNR submitted at 11:01 pm, Plaintiff asked to be evaluated by nursing or a provider; in his May 25 response to that HNR, Defendant RN Henry said that Plaintiff had been seen on May 23 and 24, i.e., that Plaintiff had been seen while waiting for a response to his HNR.  (*Id.* ¶¶ 153, 154.)  At 11:14 pm, Plaintiff submitted the third HNR, in which he reported persistent back pain, 35-pound weight loss, and a growth between his hip and

---

[9] An ICS is an ADC process "to prepare for, prevent, respond to, recover from, and mitigate incidents and emergencies."  *See* Department Order (DO) 706 at 1, [https://perma.cc/YW9C-84QF].

spine.  (*Id.* ¶ 155.)  Defendant RN Patterson responded to that HNR within 24 hours, but, according to Plaintiff, failed to review the pattern of requests in Plaintiff's medical record or advocate for a higher level of care.  (*Id.* ¶¶ 155, 156.)  At 11:22 pm, Plaintiff submitted his fourth HNR, which he labeled EMERGENCY, EMERGENCY, EMERGENCY.  (*Id.* ¶ 157.)  According to Plaintiff, nursing should have immediately triaged him but there is "no indication that nursing immediately assessed [Plaintiff] or that nursing obtained collateral [sic] from the living unit to assist" in triaging him.  (*Id.* ¶¶ 157, 158.)

The following day, Plaintiff submitted another HNR reporting back pain at 9 out of 10 and stating that the lump on his back was growing larger, he had lost 35 pounds, and had lost the ability to walk to get meals or to dress.  (*Id.* ¶¶ 64, 159-61, 186.)  He asked for immediate help and noted that he had not even been seen by a nurse.  (*Id.* ¶ 186.)  Plaintiff submitted a second HNR again requesting a cane.  (*Id.* ¶ 64.)

On May 23, 2022, another medical ICS was initiated because of Plaintiff's back pain, and he was brought to the medical unit in a wheelchair, where he was evaluated by Defendant RN Garcia.  (*Id.* ¶¶ 65, 159, 186.)  Plaintiff rated his pain at 9 out of 10.  (*Id.*)  A urinalysis tested positive for morphine.  (*Id.*)  Defendant NP Dauod was called, and she ordered ice and meals to be delivered to Plaintiff in his cell for three days.  (*Id.* ¶¶ 67, 186.)  Defendant RN Garcia did not obtain Plaintiff's vitals or refer him to higher-level care despite his medical history and progressively worsening symptoms.  (*Id.* ¶ 159.)  Plaintiff was sent back to his unit without being seen by a higher-level provider or being scheduled for any follow-up.  (*Id.* ¶¶ 68, 186.)

On May 24, 2022, Plaintiff was seen by the sick call nurse, Defendant RN Bodily, in response to April 5 and May 21, 2022 HNRs.  (*Id.* ¶¶ 69, 162.)  Bodily noted Plaintiff's complaints of a painful lump on his right lower back and radiating pain from his lower back into his leg.  (*Id.* ¶¶ 71, 187-88.)  Bodily also noted a small, hardened painful lump on the right lower back.  (*Id.* ¶¶ 71-72, 188.)  Plaintiff reported that ibuprofen was not alleviating his pain.  (*Id.* ¶ 187.)  Defendant PA Lenhart verbally ordered a course of 20 mg of prednisone for five days and Plaintiff was scheduled to be seen by a provider on

1  June 7, 2022.  (*Id.* ¶¶ 73, 188.)

2          On May 25, 2022, Plaintiff submitted two HNRs complaining of back pain and an

3  inability to walk and requested another Toradol injection and an MRI or CT of his back.

4  (*Id.* ¶¶ 74, 189.)   Plaintiff also reported that he had not received refills of his pain

5  medications.  (*Id.*)  As a result of another medical ICS, on May 26, 2022, Defendant NP

6  Dauod verbally ordered a urine drug screen, ice, Tylenol, and Motrin for Plaintiff without

7  seeing Plaintiff.  (*Id.* ¶ 228.)

8          On June 2, 2022, Plaintiff submitted another HNR stating that he had yet to receive

9  his medication refills for ibuprofen or Tylenol and cited his May 23 request for pain

10  medication.  (*Id.* ¶ 75.)   On June 6, 2022, Defendant RN Patterson responded that both

11  prescriptions had expired and had not been renewed and sent a renewal request to the

12  provider.  (*Id.* ¶¶ 76, 163.)

13          On June 4, 2022, another medical ICS was initiated, during which Defendant RN

14  Webb saw Plaintiff.  (*Id.* ¶¶ 77, 190.)  Plaintiff reported lower back pain at a 9 out of 10,

15  and bilateral leg swelling.  (*Id.*)  On exam, Defendant Webb confirmed bilateral lower leg

16  swelling and impaired movements.  (*Id.* ¶¶ 78, 164, 190.)  A urinalysis was ordered.  (*Id.*,

17  ¶ 190.)  Plaintiff was issued analgesic muscle cream, ibuprofen, and meals in his cell for

18  three days.  (*Id.* ¶¶ 79, 190.)  He was also told to elevate his legs.  (*Id.*)  Plaintiff returned

19  to his unit.  (*Id.*)  Plaintiff was not seen by a higher-level provider.  (*Id.* ¶¶ 80, 191.)

20          On June 6, 2022, Plaintiff submitted an HNR stating that he had not received his

21  pain medications and still had severe back pain.  (*Id.* ¶¶ 81, 192.)

22          On June 8, 2022, Defendant PA Lenhart examined Plaintiff, who complained of

23  seriously compromised mobility, including walking, standing, and bending, and urinary

24  incontinence resulting from his inability to quickly walk to a restroom.  (*Id.* ¶¶ 82, 193.)

25  Defendant Lenhart noted tender right lumbar paraspinal muscles, "fullness" on Plaintiff's

26  right lower back, and an abnormal gait (shuffling).  (*Id.* ¶¶ 83, 193.)  Lenhart noted that

27  Plaintiff's straight leg test was positive bilaterally and that he had pain with right hip

28  abduction, although his lower leg swelling had subsided.  (*Id.* ¶ 193.)  Lenhart prescribed

ibuprofen, Tylenol, a back support belt, a cane or walker, laboratory tests, and an x-ray of Plaintiff's lumbar spine and right hip.  (*Id.* ¶¶ 84, 193.)

A June 13, 2022 note on the Inmate Health Issue Report stated that health care providers saw that Plaintiff could barely walk (*Id.* ¶ 229.)  This note also stated that Plaintiff had been seen by providers on June 8, 2022, and was ordered to lie-in for three days and use a cane to walk to the chow hall.  (*Id.*)

On June 14, 2022, Plaintiff's lumbar spine was x-rayed.  (*Id.* ¶¶ 85, 194.)  Defendant PA Lenhart reviewed the x-ray results and ordered back rub and a back support belt without seeing Plaintiff.[10]  (*Id.* ¶ 231.)  Two hours later, a "STAT" reading was "called in which showed osteoporotic compressions of the spine suspicious for osteomyelitis."  (*Id.* ¶¶ 86, 194.)  Plaintiff was brought back to medical on an emergent basis and Defendant Lenhart ordered him transported to an emergency room based upon the suspected osteomyelitis of the lumbar spine.[11]  (*Id.* ¶¶ 86, 194, 232.)  Lenhart noted that Plaintiff had been experiencing severe pain, difficulty ambulating, and urinary incontinence for one month.  (*Id.* ¶ 232.)  Lenhart noted that the laboratory tests ordered on June 8, 2022, still had not been performed.  (*Id.* ¶ 233.)

Plaintiff was admitted to the hospital for lumbar vertebral diskitis,[12] osteomyelitis with possible psoas, psoas abscess, anemia, and "significant medical history of high-risk diagnosis—bacteremia with tricuspid valve endocarditis."  (*Id.* ¶¶ 97, 234.)  On June 16, 2022, Plaintiff underwent surgery to drain, repair, and correct a spinal abscess and damage from his previously undiagnosed and untreated spinal infection.  (*Id.* ¶ 235.)  Plaintiff received implants and metal rods to stabilize his spine, and long-term antibiotic therapy.

---

[10] Although Plaintiff alleges that "Katie *Leinhart* PA" conducted this review, he appears to be referring to Defendant PA Lenhart.

[11] Osteomyelitis is a bone infection primarily caused by bacteria or other germs. *See* https://medlineplus.gov/ency/article/000437.htm [https://perma.cc/FDL7-AR5N].

[12] "Diskitis is swelling (inflammation) and irritation of the space between the bones of the spine (intervertebral disk space)." *See* https://medlineplus.gov/ency/article/000993.htm [https://perma.cc/W6DQ-S7PH].  It can be caused by an infection from bacteria or a virus.  *Id.*

(*Id.* ¶¶ 89, 242.)  Plaintiff returned to prison on June 22, 2022, and was placed in the infirmary.  (*Id.* ¶ 236.)

As a result of the foregoing conditions, Plaintiff has permanently lost mobility in his back and continues to experience numbness below his stomach and weakness in his arms, hands, legs, and feet.  (*Id.* ¶¶ 90-91.)  Further, Plaintiff cannot walk normally and relies on both a wheelchair and a walker for ambulation.  (*Id.* ¶¶ 92, 247.)  Plaintiff requires physical therapy to regain some use of his legs, must rely on adult diapers, and has sexual dysfunction issues.  (*Id.* ¶ 247.)

In **Count One**, Plaintiff alleges negligence and gross negligence, and medical malpractice against the State of Arizona, Centurion, and the Individual Medical Defendants.  (*Id.* ¶ 95.)  He contends Centurion and the Individual Medical Defendants were negligent in failing to follow-up on Plaintiff's continuing and worsening symptoms or determine and treat their cause by timely performing appropriate medical testing, resulting in a spinal lesion that permanently damaged Plaintiff's spine.  (*Id.* ¶¶ 102, 113.) Plaintiff contends Defendant State of Arizona was negligent or grossly negligent in hiring and retaining Centurion to provide medical care to ADC prisoners, including Plaintiff.  (*Id.* ¶ 108.)  He also alleges Defendant State of Arizona is vicariously liable for the tortious acts of Centurion and the Individual Medical Defendants.  (*Id.* ¶ 115.)  According to Plaintiff, the Individual Medical Defendants failed to conform to applicable standards of care when treating him between February 26, 2022, and June 2022,[13] by failing to timely undertake medically appropriate testing, refer him to higher level providers and specialists, and consider differential diagnoses and his history of endocarditis and intravenous drug abuse.  (*Id.* ¶¶ 133, 135-64, 166, 168-70, 172-200, 203-204.)  Plaintiff cites the opinions of three medical professionals[14] who opine that the Individual Medical Defendants were

---

[13] Plaintiff refers to wrongful acts occurring between February 26 to September 15, 2022, however, Plaintiff alleges no facts to support that any wrongful acts or omissions occurred after June 2022, when Plaintiff went to the hospital and received surgery and other treatment.  (*See* Doc. 1-3, ¶¶ 203, 218, 251, 283.)

[14] Pamela M. Mangine, RN, BSN, PHN, LSN, CCHP-RN, Claudia Barrett, PA-C, and Denise Kilburn, NP-C. (Doc. 1-3, ¶¶133-34, 171-72, 201-203.)

1  negligent or grossly negligent.

2         In **Count Two**, Plaintiff alleges a claim for negligent hiring, retention, and

3  supervision against Centurion, as the employer of the Individual Medical Defendants, and

4  against Defendants Shinn and Pratt, who allegedly contracted with Centurion.  Plaintiff

5  alleges that Defendant Centurion knowingly persisted in a policy, practice, or custom of

6  operating with unsafe staff levels and demonstrated a callous disregard for Plaintiff's

7  known serious medical needs.  Plaintiff further alleges that Centurion had a policy,

8  practice, or custom of delaying medical care for prisoners, including Plaintiff.  Plaintiff

9  contends that Centurion and State of Arizona were grossly negligent or negligent in the

10  hiring, training, and supervision of the Medical Defendants, and others involved with the

11  negligent treatment of Plaintiff.

12         In **Count Three**, Plaintiff alleges an Eighth Amendment medical care claim against

13  Centurion and the Individual Medical Defendants.

14         In **Count Four**, Plaintiff alleges that Defendant Centurion had an unconstitutional

15  policy, practice, or custom of (1) using nurses to triage urgent or emergent HNRs and

16  failing to refer prisoners with urgent medical needs to providers for evaluation and (2)

17  operating with insufficient staff.  Plaintiff alleges that as a result, he was denied appropriate

18  evaluation, including diagnostic testing, and the diagnosis and treatment of his serious

19  medical condition was delayed for weeks, resulting in permanent injury to him.  (*Id.*

20  ¶¶ 305-18.)

21  **IV.    Discussion**

22         To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants

23  (2) under color of state law (3) deprived him of federal rights, privileges or immunities and

24  (4) caused him damage.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir.

25  2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278,

26  1284 (9th Cir. 1994)).  In addition, a plaintiff must allege that he suffered a specific injury

27  as a result of the conduct of a particular defendant and he must allege an affirmative link

28  between the injury and the conduct of that defendant.  *Rizzo v. Goode*, 423 U.S. 362, 371-

72, 377 (1976).

### A.   Fictitiously Named Defendants

Plaintiff has named as Defendants several fictitiously identified individuals, corporations, and partnerships.  Plaintiff has not alleged facts to support that any of these Defendants have violated his constitutional or state law rights.  Accordingly, these fictitiously named Defendants will be dismissed.

### B.   Individual Medical Defendants

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment.  To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference.  *Jett*, 439 F.3d at 1096.  Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety.  *Farmer*, 511 U.S. at 835.  "Neither negligence nor gross negligence will constitute deliberate indifference."  *Clement v. Cal. Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458,

460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Plaintiff alleges that Centurion and all the Individual Medical Defendants violated his Eighth Amendment rights. Plaintiff sufficiently alleges a serious medical need. He also sufficiently alleges facts to state an Eighth Amendment claim against Defendant Centurion. Plaintiff alleges that he repeatedly sought care for back pain over approximately four months, and that various Defendant RNs responded to or reviewed his HNRs. These allegations, however, are not sufficient to state a claim against the Defendant RNs. While they may have been negligent in failing to review Plaintiff's medical history and failing to refer Plaintiff to higher levels of care, Plaintiff does not sufficiently allege facts to state an Eighth Amendment claim against any of them. Accordingly, Plaintiff's Eighth Amendment claim against the Defendant RNs will be dismissed.

Plaintiff also asserts that Defendants Lenhart, Thompson, Coronado, and Dauod acted with deliberate indifference to Plaintiff's continuing and progressively worsening medical symptoms. Plaintiff sufficiently states a deliberate indifference claim against Defendant Lenhart, who saw Plaintiff on multiple occasions without timely undertaking diagnostic testing to assess the cause of Plaintiff's worsening condition, including lumbar x-rays she reviewed on June 14, 2022, for which she prescribed back rub and back support. It appears that Lenhart sent Plaintiff to the ER only after a higher-level provider, such as a radiologist, reviewed the x-rays and noted possible osteomyelitis. Defendant PA Lenhart will be required to answer Count Three.

Plaintiff alleges that after he submitted his February 21, 2022 HNR complaining of

lower back pain and concern about a possible fracture, and alleged unbearable pain and difficulty walking, a nurse placed him on the nurse pill line.  Four days later, Defendant NP Thompson saw Plaintiff, ordered an ibuprofen prescription, a Toradol injection, and an x-ray of Plaintiff's lumbar spine.  Although there was some delay before Thompson saw Plaintiff, the Court is unable to reasonably infer that this delay was the result of Defendant Thompson's conduct or that her failure to schedule a follow-up (rather than telling Plaintiff to submit an HNR if his symptoms continued or worsened) amounted to deliberate indifference.  (Doc. 1-3 ¶ 174.)  This is particularly so given that the March 1, 2022 x-ray report found Plaintiff's lumbar spine "normal" with limited mobility when bending.  (*Id.*)  Absent more, Plaintiff fails to state an Eighth Amendment claim against Defendant Thompson and Count Three will be dismissed as to her.

Plaintiff alleges that on February 26, 2022, Defendant NP Coronado saw Plaintiff for a hepatitis C chronic care appointment at which Plaintiff complained of back pain and inability to sleep, which "self-medicating" did not help.  (Doc. 1-3 ¶ 219.)  Plaintiff alleges that Coronado noted that Plaintiff's right flank was tender to palpation, and that labs, a Torodol injection, and x-rays had been ordered.  Plaintiff faults Coronado for failing to mention Plaintiff's history of endocarditis and multidrug resistant infections, but the Court is unable to conclude that such failure rose to the level of deliberate indifference rather than mere negligence.  Accordingly, Plaintiff's Eighth Amendment claim against Defendant NP Coronado will be dismissed.

Plaintiff alleges that between May 6 and May 26, 2022 Defendant NP Dauod was Plaintiff's "medical provider" and that she ordered various tests without face-to-face contact with Plaintiff.  (Doc. 1-3 ¶ 227.)  On May 23, 2022, Defendant NP Dauod was contacted by Defendant RN Garcia following an emergency ICS concerning Plaintiff's severe back pain.  Dauod verbally ordered ice and meals in Plaintiff's living quarters for three days.  Someone, apparently Defendant Garcia, noted that Plaintiff complained of a painful lump on his right lower back and radiating pain from his lower back and down his leg.  Plaintiff does not allege that Garcia told Dauod about the emergency ICS, Plaintiff's

1   back pain, or his complaints of a back lump.  Nor does Plaintiff plausibly allege facts to

2   support that Defendant Dauod was Plaintiff's sole "medical provider" during this period,

3   as opposed to one of several providers responsible for his care.  Accordingly, absent

4   additional facts, Plaintiff fails to state an Eighth Amendment claim against Defendant

5   Dauod.

6   **V.     Claims for Which an Answer Will Be Required**

7          Plaintiff states a claim for relief under state law against each of the Individual

8   Medical Defendants, the State of Arizona, Centurion, Centene Corporation, and MHM

9   Services Incorporated in Count One.  Plaintiff also states a claim under state law against

10  Defendants Centurion, Centene Corporation, MHM Services Incorporated, Shinn, and

11  Pratt in Count Two.  Plaintiff sufficiently states an Eighth Amendment claim against

12  Defendants Centurion, Centene Corporation, MHM Services Incorporated, and Lenhart in

13  Count Three.  Finally, Plaintiff sufficiently states a claim against Defendants Centurion,

14  Centene Corporation, and MHM Services Incorporated in Count Four.  The Court will

15  require the above Defendants to respond to the cited Counts.

16  **VI.    Motions to Extend Time to Serve Remaining Defendants**

17         Plaintiff seeks an extension of time to serve the unserved Defendants, whom he

18  identifies as Defendants Ficachi, Coronado, Henry, Bodily, Webb, Dalton, and McAdams.

19  (Docs. 7, 16).  As relevant here, Plaintiff states that the Clerk of Court would not issue

20  summonses for service on the remaining Defendants and the remaining Defendants would

21  not waive service until after the Court had screened the First Amended Complaint.

22  Plaintiff's motions will be granted.

23  **IT IS ORDERED:**

24         (1)     Defendants' motion for extension of time to respond to Plaintiff's motion to

25  remand (Doc. 7) is **granted** to the extent that their response (Doc. 10) is deemed timely.

26         (2)     Plaintiff's motion to remand (Doc. 4) is **denied**.

27         (3)     Defendants Jane Does 1-10, John Does 1-10, XYZ Corporations, and/or

28  Partnerships 1-30 are **dismissed**.

1    (4)    Plaintiff's motions for extension of time to serve process (Docs. 6 and 16)

2    are **granted**.

3    (5)    The remaining Defendants must answer Count One; Defendants Centurion,

4    Centene Corporation, MHM Services Incorporated, State of Arizona, Shinn, and Pratt must

5    answer Count Two; Defendants Centurion, Centene Corporation, MHM Services

6    Incorporated, and Lenhart must answer Count Three; and Defendants Centurion, Centene

7    Corporation, and MHM Services Incorporated must respond to Count Four.

8    (6)    If properly completed, the Clerk of Court must issue the proposed

9    Summonses filed at Docs. 12, 13, 15.

10    (7)    Plaintiff must either serve each remaining unserved Defendant or seek a

11    waiver of service for each remaining unserved Defendant.

12    (8)    If Plaintiff does not either obtain a waiver of service of the summons or

13    complete service of the Summons and the First Amended Complaint on any remaining

14    unserved Defendant within 90 days of the filing of the Complaint or within 60 days of this

15    Order, whichever is later, the action may be dismissed as to each Defendant not served.

16    Fed. R. Civ. P. 4(m).

17    (9)    Any answer or response must state the specific Defendant by name on whose

18    behalf it is filed.  The Court may strike any answer, response, or other motion or paper that

19    does not identify the specific Defendant by name on whose behalf it is filed.

20    (10)    This matter is **assigned to the standard track** pursuant to Rule 16.2(b)(3)

21    of the Local Rules of Civil Procedure.

22    . . . .

23    . . . .

24    . . . .

25    . . . .

26    . . . .

27    . . . .

28    . . . .

1    (11)    This matter is referred to Magistrate Judge Alison S. Bachus pursuant to
2  Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as
3  authorized under 28 U.S.C. § 636(b)(1).
4    Dated this 15th day of May, 2024.

James A. Teilborg
Senior United States District Judge